

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 14, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KRISTINE K.,[1]

              Plaintiff,

      v.

FRANK BISGNANO,
Commissioner of Social Security,

              Defendant.

Case No. 1:25-cv-03016-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

Due to lumbar, thoracic, and cervical degenerative joint disease; postural orthostatic tachycardia syndrome; mast cell activation syndrome; depressive disorder, migraine headaches, asthma-like symptoms, and gastrointestinal issues, Plaintiff Kristine K. claims she

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

is unable to work full-time and applied for supplemental security income benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the credibility of Plaintiff's subjective complaints and the third-party witness statement, and the ALJ erred in his evaluation of the medical opinion of MFT-Intern William Brobst. Although the record reflects that Plaintiff's impairments limit her physically, the ALJ's nondisability is adequately explained and supported by substantial evidence. For the reasons that follow, the ALJ's decision is affirmed.

## I.    Background

In April 2021, Plaintiff filed an application for benefits under Title 16, claiming disability beginning October 29, 2020, based on the physical impairments noted above.[2] After the agency denied her

---

[2] AR 266-273, 314.

application initially and on reconsideration[3], Plaintiff requested a hearing before an ALJ.[4]

On January 11, 2024, ALJ David Skidmore (the ALJ) held a hearing, at which Plaintiff and a vocational expert testified.[5] After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Neil Shibuya, MD, and Proyanka Gerrish, MD, to be not persuasive.

- The opinions of state agency evaluators Marisa Hendron, PhD, and Jack Araza, PhD, to be persuasive.

---

[3] AR185, 198.

[4] AR 206.

[5] AR 96-131.

[6] AR 14-42.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 24-31.

- The opinions of examining source William Brobst, MFT-I, to be unpersuasive.[8]

The ALJ also considered the third-party witness statement of Phyllis B. and found it to be vague and not persuasive.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 29, 2021, her application date.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar, thoracic, and cervical degenerative joint disease; POTS (postural orthostatic tachycardia syndrome); MCAS (mast cell activation syndrome); and depressive disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically

---

[8] AR 32-34.

[9] AR 34-35.

considered Listings 1.15, 4.00, 3.00, 5.00, 8.00, 11.00, 12.04, 12.07, and 14.00.

- RFC:  Plaintiff had the RFC to perform work at the light exertional level with the following exceptions:

  [Plaintiff can] can never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; no work at unprotected heights or near dangerous moving machinery; no work around open unguarded bodies of water; no concentrated exposure to environmental irritants such as temperature extremes, fumes, odors, dusts, gases, or poorly ventilated areas; [Plaintiff] can focus and concentrate on routine work involving occasional decision-making and occasional changes in the work setting; [Plaintiff] can maintain persistence and pace for 90% of an average workday; no tandem tasks or more than occasional interaction with co-workers; and no more than brief and superficial interaction with the public.

- Step four: Plaintiff was unable to perform her past relevant work.

- Step five: Plaintiff was able to perform jobs available in the national economy in substantial numbers as an office helper

(DOT# 239.567-010); marker (DOT# 209.587-034); and routing clerk (DOT# 222.687-022). .[10]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[10] AR 20-37.

[11] AR 257, ECF No. 1.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

## III.   Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred when evaluating Plaintiff's subjective complaints, erred in evaluating the third-party witness statement, and erred when evaluating the opinion of MFT-I Brobst. The Commissioner argues there was no error because the ALJ reasonably assessed Mr. Brobst's opinions, adequately explained that the witness statement was vague and lacked persuasive value, and

_____

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

reasonably discounted Plaintiff's allegations of disabling impairments during the relevant period. As is explained below, the Court agrees with the Commissioner and affirms the ALJ's nondisability finding.

## A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred by finding that the opinion of examining mental health counselor in-training, William Brobst, MFT-I, was not persuasive because it was not supported by his own exams and inconsistent with the record.[15] Plaintiff argues that the ALJ was vague in his implied finding that the opinions were based on a single examination, erred in finding that Mr. Brobst's opinions were inconsistent with the benign findings, that the ALJ erred in finding that Mr. Brobst's failing to answer whether Plaintiff had a severe impairment was an indication he did not, and that the ALJ erred in finding that Mr. Brobst's opinions were inconsistent with Plaintiff's lack of mental health treatment and daily activities.

---

[15] ECF No. 13.

The Court addresses each of these arguments. As is explained below, the ALJ reasonably found that Mr. Brobst's opinions were not sufficiently explained or supported by the record.

1.  Standard

An ALJ must consider and articulate how persuasive he found each medical opinion, including whether the medical opinion was consistent with and supported by the record.[16] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[17] Supportability and consistency are the most important factors.[18] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[19]

---

[16] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[17] 20 C.F.R. § 416.920c(c)(1)–(5).

[18] *Id.* § 416.920c(b)(2).

[19] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

At step-two a medically determinable impairment can only be found to exist on the basis of objective evidence from an acceptable medical source.[20]  The regulations further establish:

*Acceptable medical source* means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);
(2) Licensed psychologist, which includes:
    (i) A licensed or certified psychologist at the independent practice level; or
    (ii) A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;
(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;
(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle;
(5) Qualified speech-language pathologist for speech or language impairments only. For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language

---

[20] 20 C.F.R. § 416.921.

Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only (with respect to claims filed (see § 416.325) on or after March 27, 2017);

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (only with respect to claims filed (see § 416.325) on or after March 27, 2017); or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice (only with respect to claims filed (see § 416.325) on or after March 27, 2017).[21]

## 2.   MFT-I Brobst's examination and opinion

On May 10, 2021, Plaintiff presented to William Adam Brobst, MFT-I, for a mental health assessment on Plaintiff's own self-referral.[22] Plaintiff reported that she was not a harm to herself or others and never had been.[23] She reported no stressful events occurring in the last 12 months but said that when she was 8 years old her step-

---

[21] 20 C.F.R. § 416.902(a).

[22] AR 670-681, 670.

[23] AR 670.

father was threatening her family with a gun.[24] Plaintiff said she used to be aggressive but no longer is; she endorsed life-long panic attacks and anxiety; endorsed life-long depression with poor concentration, pressured speech, and unresolved grief; and reported head trauma due to being hit by cattle in 2016.[25] Plaintiff reported somatic complaints of headaches, stomach pain, and seizures; and reported a life-long history of physical abuse.[26] She also reported that her mother drank during her pregnancy.[27]

Plaintiff reported that she did not have asthma, diabetes, seizures, or heart problems but did have allergies; that she had never been hospitalized and that she saw a doctor regularly.[28] Plaintiff denied that she had ever used illegal substances but said she had been

---

[24] AR 671.

[25] *Id.*

[26] AR 672.

[27] *Id.*

[28] AR 673.

on probation for substance use and had been clean for 10 months.[29] Plaintiff reported a current mental health history of anxiety, PTSD, and depression.[30]

On examination, Plaintiff had appropriate appearance, appropriate behavior, no impairment in mood, no impairment in perception, no impairment in intelligence, she was fully oriented, her judgment was intact, her memory was not impaired, and her thinking was not impaired.[31] Mr. Brobst diagnosed generalized anxiety disorder and major depressive disorder.[32]

On July 8, 2021, Mr. Brobst completed a medical mental source statement.[33] He opined that Plaintiff was mildly limited in the following: the ability to understand and remember very short, simple instructions; and the ability to maintain socially appropriate behavior

---

[29] AR 674.

[30] AR 675-676.

[31] AR 677-678.

[32] AR 678.

[33] AR 835-837.

and adhere to standards of neatness and cleanliness.[34] He opined that Plaintiff would have a moderate limitation in the following: the ability to remember locations and work-like procedures, the ability to carry out short and simple instructions, the ability to make simple work-related decisions, the ability to interact with the public, the ability to accept criticism from supervisors, the ability to get along with co-workers and peers, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals.[35] Mr. Brobst opined that Plaintiff would have a marked limitation in the following: the ability to understand and remember detailed instructions, and the ability to be aware of hazards and take precautions.[36] He opined that Plaintiff would have an extreme limitation in the following abilities: carry out detailed instructions, maintain attention and concentration for extended periods, adhere to a regular schedule and be punctual, sustain an ordinary routine without special supervision, work in

---

[34] AR 835-836.

[35] AR 835-837.

[36] *Id*.

proximity to others without being distracted, complete a normal workweek without special supervision, and travel in unfamiliar places.[37]

On March 28, 2023, Mr. Brobst conducted a second mental health assessment.[38] Plaintiff reported that her strengths were that she is good at talking to people and listening.[39] Plaintiff reported that she was not a harm to herself or others and never had been.[40] She reported no stressful events occurring in the last 12 months other than financial issues.[41] Plaintiff otherwise made the same reports that she made at the first examination regarding life-long panic attacks and anxiety; life-long depression with poor concentration, lack of motivation, low energy, and unresolved grief; and head trauma in 2016.[42] Plaintiff

_____

[37] *Id.*

[38] AR 1111-1120.

[39] AR 1111.

[40] *Id.*

[41] AR 671.

[42] AR 1111-1113.

reported somatic complaints of headaches, stomach pain and seizures;
and reported a life-long history of physical abuse.[43] She also reported
that her mother drank during her pregnancy.[44]

On examination, Plaintiff had appropriate appearance,
appropriate behavior, no impairment in mood, no impairment in
perception, no impairment in intelligence, she was fully oriented, her
judgment was intact, her memory was not impaired, and her thinking
was not impaired.[45] Mr. Brobst diagnosed post-traumatic stress
disorder and major depressive disorder.[46]

3.    The ALJ's findings

When evaluating Mr. Brobst's opinion, the ALJ gave several
reasons for concluding that it was not persuasive.[47]  First, the ALJ

---

[43] AR 1113.

[44] *Id.*

[45] AR 1118-1119.

[46] 678.

[47] AR 33-34.

found that Mr. Brobst's opinion was inconsistent with his own

examination findings.[48]  The ALJ stated:

> This opinion is unpersuasive as it is neither supported by or
> consistent with the evidence of record. First, this
> questionnaire appears to have been completed based on one
> single mental health assessment of the claimant a couple
> months before and there are no other corresponding
> treatment notes indicating any care or follow up in the
> interim. Allegedly, the claimant saw this MFT intern once
> again about two years later, but as already described above,
> the report is almost a carbon copy of the 2021 report
> meaning that there were the same exact complaints,
> findings, and goals documented but the therapist concluded
> that she did not have anxiety but now had PTSD yet the
> report lacked any details on the clinically significant effects
> on functioning or description of the symptoms or signs the
> claimant specifically suffered related to traumatic or
> stressful event(s). Moreover, the various limitations opined
> by the therapist, who is not an acceptable medical source, in
> understanding and memory, sustained concentration and
> persistence, social interaction, and adaptation not only lack
> any support from treatment notes of Mr. Brobst because
> there are none in the current file, but they are also
> unbelievably inconsistent with the findings on the mental
> status examination performed and reported by Mr. Brobst
> as follows: appropriate appearance, appropriate behavior,
> intact judgment, no mood impairment, no perception
> impairment, no intelligence functioning impairment, no
> orientation impairment, and no thinking impairment.
> Therefore, the mental status examination reflected no
> actual psychiatric signs, medically demonstrable
> phenomena, or observable facts that can be medically

---

[48] AR 33.

described and evaluated to indicate any specific psychological abnormality. As such, this opinion lacks support and is also inconsistent with the rest of the longitudinal record as described above.[49]

He then articulated that Mr. Brobst's opinion was inconsistent with the other treatment records and additionally, the ALJ reasoned that Mr. Brobst's opinions were not consistent with Plaintiff's activities and articulated:

Without any support from the actual treatment encounter and examination, the purported limitations appear significantly exaggerated beyond what the record supports especially in light of the fact that the claimant has not had any specialized mental health treatment of note since the application date, which further renders the opinion of the MFT unpersuasive. For example, as noted above, the therapist checked numerous boxes of severe and marked limitations suggesting very significant mental deficits in functioning in the questionnaire but his conclusions in the mental health assessments indicate that the claimant did not qualify as "severely mentally ill". The lack of any mental health treatment since the application date overall (no evidence of psychotropic medication, individual counseling/group therapy, and no emergency care or inpatient hospitalization) further belies the opinion of the therapist intern. If the claimant were truly as limited as the therapist suggests and was unable to concentrate for extended periods, sustain an ordinary routine without special supervision, travel in unfamiliar places, or be aware of normal hazards and take appropriate precautions, the

---

[49] AR 33.

longitudinal record would be replete with notes of confusion, altered mental status, inability to follow along during treatment visits, indication that she did not provide relevant answers or was unable to respond appropriately to questions, was unable to describe her past medical history, or that she needed to be accompanied to appointments and required assistance in responding to questions asked, but no such findings are documented in the file. In stark contrast, rather, the longitudinal evidence shows that the claimant has quite a routine for herself where she camps in a tent in the summer in the northwest United States and then moves south to Nevada for the winter and will live in a camper. She gardens and grows her own organic vegetables and catches her own fish, she maintains a gluten free diet, works with and cares for horses, works/volunteers at state parks, travels to Colorado and Utah from her normal locations in Nevada and Washington, camps near mines and hot springs, was exceptionally involved in her medical care, had a Master's degree in nonprofit administration and leadership as well as Bachelor's degree in psychology, previously worked as an Executive Director of an Equine Rescue, and also worked in homeless ministry, farming, and as a farrier (a specialist in equine hoof care).[50]

4.    Analysis

The Court notes that Plaintiff does not address in her argument that the ALJ considered that Mr. Brobst is not an acceptable medical source and that at the time that he conducted both examinations of

---

[50] AR 33-34.

DISPOSITIVE ORDER - 19

Plaintiff he was a Marriage and Family Therapy Intern. The ALJ stated:

> The longitudinal record documents only two contacts with a mental health provider, William Adam Brobst, a marriage and family therapist intern (meaning he was still in training), who is not an acceptable medical source.[51]

Both of the statements made by the ALJ were factually correct. Mr. Brobst is not an acceptable medical source pursuant to the definition of an acceptable medical source provided in the regulations.[52] Additionally, Mr. Brobst clearly identified himself as a Marriage and Family Therapy "Intern" both when he examined Plaintiff in 2021 and 2023, and when he completed the medical source statement.[53]

The Court concludes that it was not error for the ALJ to have considered both that Mr. Brobst was not an acceptable medical source and that he was in training. The fact that Mr. Brobst is not acceptable medical source supports the ALJ's decision not to accept PTSD as a

---

[51] AR 30.

[52] 20 C.F.R. § 416.902(a).

[53] AR 670, 837, 1111.

determinable impairment because it was not a diagnosis supported by any acceptable medical source and is therefore not established as a medically determinable impairment.  Additionally, the ALJ was allowed to consider the fact that Mr. Brobst was still in training at the time that he rendered his opinions, as the regulations specifically state that the ALJ may consider a medical source's training and expertise when evaluating persuasiveness.[54]

Plaintiff argues that the ALJ erred in reasoning that the opinion was unpersuasive in part because it appeared to have been based upon a single assessment.[55] The Commissioner counter-argues that the ALJ's consideration of that factor was appropriate under the regulations.[56]  The Court agrees with the Commissioner that the ALJ's consideration of the limited relationship between Mr. Brobst was proper, particularly in light of the fact that it was only one of the many factors upon which the ALJ based his reasoning. The factors for

---

[54] 20 C.F.R. § 416.920c.

[55] ECF No. 13.

[56] ECF No. 15, citing 20 C.F.R. § 416.920c(3)(i)-(ii).

evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[57] The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements.[58] Additionally, as noted previously, the ALJ considered that the single examination was made by a source who was not an acceptable medical source and that the source in question was still in training and therefore lacking in experience.

There is no question that the ALJ was obliged not only to consider the supportability and consistency factors when assessing Mr. Brobst's opinions. Supportability and consistency are the most important factors.[59] The ALJ is to consider the supporting explanation

---

[57] 20 C.F.R. § 416.920c(c)(1)–(5).

[58] *Id.*

[59] *Id.* § 416.920c(b)(2).

provided by the medical source and the extent of the relevant objective medical evidence supporting the opinion.[60]

Whether a medical opinion is consistent with the longitudinal record—including Plaintiff's reported symptoms—and is based on more record review and supporting explanation are factors for the ALJ to consider.[61] Yet, an ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."[62] In addition, an ALJ may discount

---

[60] 20 C.F.R. §416.920c. *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). *See also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[61] 20 C.F.R. §§ 404.1520c, 416.920c.

[62] *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

an opinion that is inadequately supported by medical findings and observations.[63] Moreover, "[a] physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes."[64]

_____

[63] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[64] *Buck*, 869 F.3d at 1050; *see also Baker v. Saul*, 836 F. App'x 526, 528 (9th Cir. 2020) (unpublished) (noting that the psychologist had only met with the claimant once and "[t]he ALJ compared [the psychologist]'s conclusions to the doctor's own notes, which indicated that Baker performed within the normal limits for six of the eight "additional detail" categories on the mental status exam.").

1      Contrary to Plaintiff's argument, the ALJ adequately articulated

2   that the examination findings were wholly inconsistent with the

3   extreme limitations to which Mr. Brobst, who was both an intern/in-

4   training and not an acceptable medical source, opined.  The ALJ's

5   findings were not vague.  The ALJ noted that on examination Plaintiff

6   exhibited appropriate appearance, appropriate behavior, no

7   impairment in mood, no impairment in perception, no impairment in

8   intelligence, she was fully oriented, her judgment was intact, her

9   memory was not impaired, and her thinking was not impaired.[65]  In

10  short, all objective evidence was within normal limits.  While a lack of

11  objective evidence supporting mild or moderate limitations might be

12  explained, a complete lack of objective evidence supporting marked and

13  extreme limitations is questionable.  The Court concludes that the ALJ

14  did not err in his consideration of the lack of supporting findings in

15  Mr. Brobst's examination and the supportability factor.

16      The ALJ's articulated reasoning that Mr. Brobst's opined

17  limitations were exaggerated beyond what the record supported was a

18

19

20

21  _____

22  [65] AR 677-678.

23

proper finding regarding the consistency of the opinions to the longitudinal record.  It is notable that Plaintiff did not seek any actual mental health treatment beyond her presenting to Mr. Brobst twice for evaluations and presenting to an ER with a request that they diagnose her with a severe mental illness "to help get benefits."[66]  There is no indication that Plaintiff ever followed up on Mr. Brobst's recommendation that she attend individual therapy.  Because Mr. Brobst was not a source capable of prescribing medication and Plaintiff disregarded his recommendation to attend counseling, the ALJ did not err in inferring that the purpose of the evaluation was to assist in Plaintiff's claim for benefits rather than to seek actual treatment.

While Plaintiff presented for care on numerous occasions at both medical clinics and ER's for treatment for her physical impairments, the only other time that she presented for mental health issues was the ER visit in which she stated she wanted a diagnosis to aid in her disability claim. During this ER visit, Christopher Sessions, PA,

---

[66] AR 813.

declined to diagnosis a mental illness and opined that Plaintiff was not a danger to herself or others and, presumably, therefore not in need of emergency care.[67]

The Court additionally concludes that the ALJ's reasoning that Mr. Brobst's opinions are inconsistent with Plaintiff's daily activities is substantially supported by the record. For example, the ALJ noted that Plaintiff works/volunteers at state parks, and travels to Colorado and Utah from her normal locations of Nevada and Washington.[68] There is an inconsistency in the fact that Plaintiff routinely travels between four states over a span of thousands of miles and the fact that Mr. Brobst opined that Plaintiff is "severely limited" in the ability to travel in unfamiliar places and use public transportation.[69] Similarly, the ALJ noted that Plaintiff has been involved in her medical care, obtained a Master's degree in non-profit administration and a Bachelor's degree in psychology, and worked as the executive director

---

[67] *Id.*

[68] AR 34.

[69] AR 837.

of a non-profit.[70] Those activities are inconsistent with Mr. Brobst's opined "severe limitation" in: carrying out detailed instructions, maintaining attention and concentration, and sustaining an ordinary routine without special supervision.

### 5.   Summary

It is the ALJ's responsibility to review and evaluate the conflicting evidence and medical opinions.[71] The ALJ meaningfully explained why he evaluated Mr. Brobst's medical opinions as he did, and these reasons are supported by substantial evidence.

## B.   Symptom Reports: Plaintiff fails to establish consequential error

Plaintiff argues the ALJ failed to properly assess her subjective complaints regarding her postural orthostatic tachycardia syndrome (POTS), mast cell activation syndrome (MCAS), and mental health issues.

---

[70] AR 34.

[71] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

1. <u>Standard</u>

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[72] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[73] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[74] "The

---

[72] *Molina*, 674 F.3d at 1112.

[73] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[74] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

clear and convincing standard is the most demanding required in Social Security cases."[75] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[76]

### 2.    Relevant Testimony

#### a.    *Plaintiff's Testimony*

On January 11, 2024, Plaintiff appeared with her attorney via telephone for a hearing before the ALJ.[77] Plaintiff said that the greatest obstacle to her working was her frequent absences.[78] She was let go from her last two jobs after less than 30 days due to frequent

---

[75] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[76] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[77] AR 96-131.

[78] AR 102-103.

absence.[79] At least eight times the employer sent her home because she was sick and once an employer took her to the ER because of an allergic reaction.[80] She was given a 14-day trial of employment but missed 3 days due to symptoms caused by the barometric pressure changing.[81] Plaintiff said both times she was working outdoors.[82] She said the medication she takes for back pain also knocks her out.[83] When working she has constant anxiety that she will miss work and be fired.[84]

She said that her back hurts from walking and standing and that physical therapy would help but she was homeless.[85] She cannot stand

---

[79] *Id.*

[80] AR 103.

[81] *Id.*

[82] AR 104.

[83] AR 105.

[84] AR 106.

[85] *Id.*

in one spot or sit for more than 45 minutes and will fall if standing.[86]

She will need to shift her position between standing, walking, sitting,

and laying down.[87] There are days she stays in bed but most days she

will lie down after about an hour and half.[88]

Plaintiff said that if she stands too quickly her blood pressure

drops, her heart races, and she will fall.[89] She will not faint, but she

will get dizzy.[90] Getting IV fluid helps and she has asked for the doctor

to give her IV fluid every other day, but he will not agree.[91] She takes

walks daily and carries a yoga mat with her so she can sit or lay

_____

[86] *Id.*

[87] AR 107.

[88] AR 107.

[89] AR 108.

[90] *Id.*

[91] *Id.*

down.[92] She reads and writes, and works hard at volunteering so she does not have time for hobbies anymore.[93]

Plaintiff said that she gets drowsy from Benadryl and that her muscle relaxer makes her "stupid."[94] She has asked for cortisone shots, but her doctors won't give them to her although she has asked.[95] She takes Benadryl once or twice a week.[96] She has no problems sleeping but she is always fatigued.[97] Her concentration is good unless she has a bad day and she has no problem getting along with others but can be allergic to perfumes people wear, and she is able to do volunteer work

---

[92] AR 109.

[93] *Id.*

[94] *Id.*

[95] AR 109-110.

[96] AR 110.

[97] *Id.*

with the homeless because they do not wear perfumes.[98] There is no treatment for MCAS so she stays away from people wearing perfume.[99]

Plaintiff testified that half her days are good days and half are bad days.[100] She cannot properly schedule anything and has to avoid others.[101] She said that she used to drop weight due to digestive issues but since 2021 her weight and digestion have been stable.[102] She has a master's degree in nonprofit administration, and she volunteers in the administrative offices of a nonprofit.[103]

Plaintiff said she cannot work as a teacher or substitute teacher because there are too many odors and fumes.[104] She said she was currently homeless and that she had been living in a van for six years

---

[98] AR 110-111.

[99] AR 111.

[100] AR 112.

[101] *Id.*

[102] AR 113.

[103] AR 114.

[104] AR 115.

because she was allergic to Lysol, Pine-Sol, and bleach used at shelters.[105]

Plaintiff said she had been diagnosed with fibromyalgia and that most of her allergies were the result of MCAS.[106] She said that she had severe allergies for her entire life, that the first allergy she remembers was to black pepper, and that she did not realize other food allergies as a child and only realized as an adult when chopping vegetables.[107] She said she was tested for asthma and that she does not have asthma but that she has breathing issues due to allergies.[108]

Plaintiff said she has 9 Epi-Pens she carries in her camper, car, and pocket but that Epi-Pens are not a cure and she has to go to the ER after using one.[109] She said she uses an Epi-Pen once a month

---

[105] AR 115-116.

[106] AR 116-117.

[107] AR 117-118.

[108] AR 118.

[109] AR 119.

unless she is in the desert.[110] She said she travels between Washington and Nevada because she can no longer regulate her temperature and has to move as the weather changes.[111] She said that she was staying at a camp site in her van.[112] She has issues with bending, twisting, cooking, and moving things but she follows her physical therapy recommendations.[113]

Plaintiff said she stopped taking gabapentin and her anti-anxiety drugs, and that she had become allergic to the medical marijuana that she had been taking.[114] She also said that light triggers headaches and she has had problems with migraine medication such as Imitrex and Topomax.[115]

---

[110] AR 120.

[111] AR 120-121.

[112] AR 121-122.

[113] AR 122.

[114] AR 123.

[115] AR 124.

Plaintiff said in a typical day she wakes and she will eat, then walk for a mile, study the bible, do online work, make lunch, and read a book.[116] She will call Home on Wheels and see if they need any volunteer work done and go in if they do.[117] She said she would like to do physical therapy more often but does not have money for gasoline.[118]

b.    *Relevant Witness Testimony*

Phyllis B., the Assistant Director of Homes on Wheels Alliance, wrote a letter in support of Plaintiff's claim.[119] She wrote that Plaintiff was a good volunteer but had limitations due to chemical sensitivities.[120] She wrote that Plaintiff volunteered at an event and that she had always kept an Epi-Pen and had to vacate the area when others had fragrances and other products on their bodies.[121] She wrote

------

[116] AR 125.

[117] *Id.*

[118] AR 126

[119] AR 368.

[120] *Id.*

[121] *Id.*

that weather conditions made Plaintiff foggy and affect her motor skills.[122] She said that once Plaintiff had to lay on the floor to stabilize her pulse and blood flow to her head.[123] Ms. Bickford wrote that Plaintiff had a strong work ethic and was trustworthy but that she could not be hired because her health issues made her unreliable.[124]

### 3.    The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable impairments not entirely consistent with the medical evidence and other evidence in the record.[125]

With regard to mental illness, the ALJ articulated the following reasoning:

> Outside of the almost duplicative reports from the MFT intern, the rest of the treatment records document grossly normal mental status findings and observations (see generally Exhibits B1F, B2F, B3F, B4F, B6F, B7F, B9F,

---

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] AR 24-31.

B11F, B12F, B13F, B15F, B16F, B17F, B18F, B19F). On December 21, 2021, when the claimant established with a new physician's assistant in Nevada, she reported that had a history of PTSD, was not currently medicated for it, and did not want to discuss PTSD at the visit. The mental findings on that date indicate that she was fully oriented, had appropriate mood/affect, normal insight/judgment, and had pressured speech. Subsequent treatment visits conducted via telehealth continued to indicate the generally normal findings and she had clear speech and did not have pressured speech again (Exhibit B9F). It does not appear that PTSD, anxiety, or depression were discussed at any other subsequent visit or that the claimant sought treatment for her PTSD symptoms. Furthermore, the claimant's Patient Health Questionnaire subjective assessment, the PHQ-2, was consistently negative (see Exhibits B9F/10, 12, 21, 23; B18F/2, 5-6). She also consistently denied suicidal ideations (Exhibits B1F, B4F, B11F, B18F, B19F).[126]

The ALJ went on to further articulate:

Accordingly, given the absence of any specific or specialized treatment for the claimant's allegedly disabling mental impairments for which she sought but never received a diagnosis of severe mental illness, the longitudinal record simply fails to document abnormalities, findings, signs, or complaints to corroborate the claimant's allegations. She has essentially received no treatment for any mental impairment since the application date and there is no evidence that this caused the claimant to decompensate, require emergency treatment and interventions, or required an inpatient hospitalization since the application date.

---

[126] AR 31.

Overall, the longitudinal record is inconsistent with a level of severity that would preclude the claimant from sustaining any work activity. However, in giving the claimant the benefit of every due consideration, and accounting for the effects of her other severe impairments, I have reduced the mental functioning in the above residual functional capacity to routine work involving only occasional decision making and occasional changes in the work setting; can maintain persistence or pace for 90% of an average workday; no tandem tasks or more than occasional interaction with co-workers; and no more than brief and superficial interaction with the public.[127]

The Court references its finding above in its analysis of Mr. Brobst's opinions.  As noted by the Court, the longitudinal record reflects no support of Plaintiff's allegations beyond the internally inconsistent opinions of Mr. Brobst, who was both an intern and not an acceptable medical source.  Notably, on examination Mr. Brobst found all Plaintiff's mental status tests to be entirely within normal limits.[128]

The only time that Plaintiff sought mental health treatment was the two visits made to Mr. Brobst for the purpose of receiving an assessment, and the ER visit in which she asked to be diagnosed solely

---

[127] *Id.*

[128] AR 677-678.

to assist her in obtaining disability benefits. Plaintiff's arguments that her failure to seek medical treatment was a result of a lack of resources or a lack of insight is unavailing. Plaintiff found the resources to attend those three appointments. She ignored the recommendations made by Mr. Brobst and sought no further treatment beyond that which would help her disability claim. Similarly, when Plaintiff presented to the ER for a mental health assessment she did not ask for medication or treatment of any kind, but rather solely for a document to support her disability claim. The Court concludes that the ALJ's consideration of those facts and his reasoning that the longitudinal record does not support Plaintiff's allegations of mental illness is reasonable and supported by substantial evidence.

With regard to Plaintiff's physical illnesses of POTS, MCAS, and degenerative disease of the spine, she argues that the ALJ erred in his finding that Plaintiff's subjective complaints were not consistent with the longitudinal record.[129] The Commissioner argues that the ALJ properly considered that the Plaintiff appeared to exaggerate her

---

[129] ECF No. 13.

DISPOSITIVE ORDER - 41

symptoms and made a number of inconsistent statements, that

Plaintiff's symptoms of POTS and MCAS were well-managed when she

was compliant with medication, that Plaintiff made a number of

incorrect reports to her medical sources, and that Plaintiff's allegations

were not consistent with her daily activities.[130] The Court agrees with

the Commissioner.

The ALJ articulated:

> After careful consideration of the evidence and testimony, it is unclear why the claimant alleges she would miss so much work and that her impairments are not well-controlled. As described herein, the allegations and testimony of the claimant are highly disproportionate to the objective medical signs and findings as well as her treatment history and her reported daily activities and living conditions.[131]

The ALJ went on to note that Plaintiff had alleged a number of

conditions from which she did not suffer, such as fibromyalgia, asthma,

Crohn's disease, and rheumatoid arthritis.[132] As the ALJ noted,

---

[130] ECF No. 15.

[131] AR 25.

[132] *Id.*

Plaintiff admitted in her testimony that she did not have asthma.[133] She also admitted in her testimony that she had not been diagnosed with rheumatoid arthritis, connective tissue disorder, or any autoimmune disorder.[134]

The ALJ considered that in addition to allegations of symptoms and conditions that were not properly diagnosed and supported by objective evidence, Plaintiff reported similar incorrect medical history to her medical sources.  For instance, on December 21, 2021, Plaintiff presented to Brittney Blazich, PA-C, of Amargosa Valley Medical Clinic and reported to her that she had "3 crushed vertebrae in her back."[135] PA-C Blazich noted that further investigation indicated that numerous advanced imaging scan such as MRI and CT-Scan revealed no fracture and only mild to moderate degenerative changes.[136] In the same office visit, Plaintiff reported a history of rheumatoid arthritis and Raynaud's

_____

[133] AR 25, citing to AR 118.

[134] AR 116.

[135] AR 846.

[136] *Id.*

as well as PTSD, although she admitted at the hearing that she did not have rheumatoid arthritis or Raynaud's and there is no evidence of any diagnosis of PTSD, as noted above.

The Court notes that when Plaintiff presented to PA Sessions of the Mt. Grant Hospital ER on November 4, 2020, requesting a mental health diagnosis, she reported similarly that she had a history of PTSD, although the record supports no such diagnosis.[137]

An ALJ may discount a claimant's symptom reports if they are inconsistent with her prior statements as that indicates a lack of candor.[138] The tendency to exaggerate or engage in manipulative conduct during the process is a permissible reason to discount the

---

[137] AR 813.

[138] 20 C.F.R. § 416.929(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

claimant's reported symptoms.[139]  Here, the ALJ has pointed to not only inconsistent statements by Plaintiff but to conduct that appears manipulative in nature.

In addition to his consideration of Plaintiff's inconsistent claims and attempts to obtain documentation of disability by supplying medical sources with false information or diagnoses, the ALJ noted that when she was compliant with medication Plaintiff suffered few if any exacerbations of her POTS or MCAS.[140]

A claimant's course of treatment, including whether symptoms improved with treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[141] While Plaintiff alleges that her MCAS was not controlled with treatment, the ALJ noted that this is inconsistent with the record.  In December 2021,

---

[139] *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

[140] AR 25-28.

[141] 20 C.F.R. § 404.1529(c)(3). See *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

Plaintiff reported to PA-C Blazich that she had an allergic reaction in May 2021 but did not use her Epi-Pen.[142] Plaintiff advised PA-C Blazich that she had never had to actually use her Epi-Pen and that they were "just for in case."[143]  Plaintiff had clearly not used but rather retained and collected her prescribed Epi-Pens, as she reported having 9 of them on hand at the time of her hearing.

The ALJ considered that when Plaintiff had a bug bite in September 2022 she was treated with Benadryl alone and did not use an Epi-Pen.[144] He also considered that when Plaintiff had an exacerbation in April 2023 it was because she did not take her prophylactic drug, hydroxyzine, and that she responded well to Benadryl and improved without needing an Epi-Pen.[145]

The ALJ's reasoning describes specific instances in which he found Plaintiff's subjective allegations to be at odds with the record.

_____

[142] AR 846.

[143] *Id.*

[144] AR 26-27, citing AR 1122-1126.

[145] AR 26, citing AR 1127-1129.

The ALJ considered that Plaintiff's activities and abilities were inconsistent with her symptom reports.[146] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of work-related functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[147] Here, the ALJ highlighted that Plaintiff's activities were quite numerous and in large part inconsistent with her claims of disabling limitations.[148]

In light of the totality of evidence, the Court finds that substantial evidence in the record supports the ALJ's findings. While the medical record might be interpreted in a different manner, it is not the duty of the Court to reweigh the evidence, but instead to determine whether substantial evidence supports the ALJ's decision. The Court concludes that the ALJ has adequately explained his reasoning. The Court declines to remand as to this issue.

---

[146] AR 26-27.

[147] *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded in part on other grounds by statute).

[148] AR 25-26.

1

2

**C.    Third-party witness statements: Plaintiff fails to establish**

**consequential error.**

3

4

Plaintiff argues that the ALJ erred in his consideration of the

third-party witness statement.  The Court disagrees.

5

6

The regulations provide that  [a]n ALJ is "not required to

7

articulate how [he] considered evidence from nonmedical sources using

8

the [medical-opinion] requirements . . . ."[149] But while the ALJ need not

9

utilize the medical-opinion articulation requirements when considering

10

evidence from nonmedical sources, the regulations do not state that the

11

ALJ is not required to consider lay statements. Instead, the regulations

12

specify that—except for some specifically excluded items not

13

encompassing lay statements about the nature, frequency, or intensity

14

of a claimant's symptoms— the ALJ "will consider all evidence in [the]

15

16

17

18

[149] 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the

19

supportability and consistency factors for a medical source's medical

20

opinions or prior administrative medical findings in your

21

determination or decision.").  *See also* 20 C.F.R. §§ 416.920(a)(3),

22

416.913(a)(4).

23

case record when [making] a determination or decision" as to

disability.[150]

The ALJ "must give reasons that are germane to each witness"

and supported by substantial evidence with reasoning clear enough to

permit meaningful review.[151]

The ALJ addressed the third-party statement in some detail

reasoning as follows:

> On January 26, 2023, the assistant director of Homes on
> Wheels Alliance, an organization that the claimant has
> volunteered for, provided a statement that the claimant was
> a good volunteer but had severe limitations in environment
> and chemical sensitivities as well as common products like
> personal hygiene and fragrances seriously triggered her and
> would incapacitate her. This individual further noted
> observing over several weeks that they worked together, the
> claimant had to vacate areas multiple times to avoid severe
> physical reactions when others were in proximity due to
> foods and chemicals. She said the claimant always had her
> EpiPen in her pocket, but as described above, the records do
> not document that the claimant has actually had to use the
> EpiPen despite the claimant's sworn testimony. Lastly, she
> described a situation where the claimant had to lay
> completely flat on the floor to stabilize her pulse and blood
> flow, which frightened staff that were present. She

---

[150] 20 C.F.R. § 416.920c(b)(2)).

[151] AR 878-879.

concluded stating that the claimant has a "strong work ethic and is trustworthy [but] the unreliability of her performance because of her chemical sensitivities and other health issues were a major factor in preventing us from" hiring the claimant as a staff member (Exhibit B11E). I have considered this statement from the assistant director, a nonmedical source, among all of the other medical and nonmedical evidence. The statement is vague as it fails to indicate specifics and speaks in generalizations, such as "multiple times" "in several weeks" and "food and chemicals, products, and environment." She stated that the claimant always had her EpiPen on her, but she does not mention if the claimant had ever used it or whether the claimant ever actually experienced severe physical reactions to triggers.[152]

The ALJ went on to further articulate:

She did not describe how the claimant would be "incapacitated" or "seriously triggered" and how often she witnessed this happen to the claimant. This statement overall does not offer new or otherwise undescribed insight to the longitudinal record and for that reason as well as it being vague and too general to support the assistant director's decision to ultimately not hire the claimant because of "unreliability of her performance." The statement fails to indicate if the claimant was frequently absent from her volunteer work trial, would be out of commission for several hours when she showed up, that they attempted to provide reasonable accommodations so that the claimant would not be exposed to chemicals, products, fragrances, or other triggers. It is understandable that people could be frightened and concerned about the claimant's well-bring, but there is no indication that the claimant was provided with a private location in which she could lie down if needed

---

[152] AR 34.

or if the claimant's only choice was to lay down amongst a large group of people. Instead of this statement providing support and credence to the claimant's allegations of disability, the assistant director's statement actually seems to suggest that the organization made discriminatory judgments about the claimant's functioning in spite of her "chemical sensitivities and other health issues," as those were a "major factor" in preventing the hire of the claimant as a staff member for the organization. Moreover, this statement is not seen as very persuasive in light of the fact that the claimant has continuously exposed herself to possible triggers such as living outdoors in nature in a tent without filtered or conditioned air, working amongst wildlife such as cattle and horses, gardening, tilling soil, growing her own vegetables, working in gardens/bushes, hiking, camping near bodies of water and mines, catching fish in rivers or streams, and continuing to smoke cigarettes despite fragrances and other scents/smoke potentially triggering her MCAS. The overall preponderance of the evidence does not support that the claimant is unable to perform work within the residual functional capacity above.[153]

The ALJ articulated that the third-party statement was vague and too general to offer substantive evidence. The Court finds the ALJ's reasoning to be sound and supported by the record. As the ALJ noted, there was no dispute that Plaintiff had been prescribed an EpiPen for possible anaphylaxis. Plaintiff testified at the hearing that

---

[153] AR 35.

she had been prescribed and collected at least 9 of them. But the record reflected that Plaintiff by her own admission had never actually had to use one of those pens.

The ALJ clearly articulated that the third-party gave no specific details as to Plaintiff having any reaction to any chemical or fragrance. Additionally, the ALJ explained that the statement that Plaintiff was triggered by fumes or perfumes is at odds with the fact that she smoked cigarettes daily. Given the record before the Court, including the ALJ's articulated reasoning for given limited weight to the third-party opinions, the Court concludes that Plaintiff has not met her burden to show consequential error. Because the Court finds that substantial evidence supports the ALJ's reasoning, the Court declines to remand as to this issue.

## D.    Step Five/RFC: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to properly include all her limitations into the RFC and the hypothetical presented to the vocational expert. However, this argument depends on her contentions that the ALJ erred in evaluating her symptom reports and the medical

opinions described above. Because there was no error, this final argument necessarily fails.[154]

## IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.     The ALJ's nondisability decision is **AFFIRMED**.

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 13 and 15,** enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of October, 2025.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[154] *See Magallanes v. Bowen*, 881 F.2d 747, 756